```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
FRANCIS OLAJIDE,                                                      :
                                                                      :
                              Plaintiff,                              :     15-CV-7673 (JMF)
                                                                      :
               -v-                                                    :     OPINION AND ORDER
                                                                      :
PALISADES COLLECTION, LLC, et al.,                                    :
                                                                      :
                              Defendants.                             :
                                                                      :
----------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/12/2016

JESSE M. FURMAN, United States District Judge:

In this case, Plaintiff Francis Olajide brings claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against several Defendants, including Palisades Collection, LLC ("Palisades"), a debt-collection agency.  Palisades now moves to disqualify Plaintiff's counsel, Mitchell Pashkin, Esq., based on his prior employment at a law firm that represented Palisades.  (Docket No. 10; *see also* Reply Def. Palisades Collection, LLC (Docket No. 18) ("Def.'s Reply") 1 (clarifying that the motion to disqualify was brought solely by Palisades)).  For the reasons that follow, Palisades's motion is DENIED.

## BACKGROUND

Between June 2011 and January 2014, Pashkin worked at the law firm Cohen & Slamowitz, LLP ("C&S"), first as the assistant managing attorney, and then, for the final ten months of his tenure, as the managing attorney.  (Def.'s, Palisades Collection, LLC, Mem. Law Supp. Mot. To Disqualify (Docket No. 11) ("Def.'s Mem.") 3).  A copy of Pashkins' resume contains two "bullets" describing his duties at C&S (without differentiating between the two positions he held).  The first bullet states that he "[d]efended federal district and state court

actions regarding alleged violations of the FDCPA." (Def.'s Mem., Ex. A). The second specifies that he "[r]eviewed, revised as needed, and approved all submissions to court or communications to opposing counsel . . . in defense of federal class actions and non-self defended [sic] federal district court actions regarding alleged violations of the FDCPA." (*Id.*).

During Pashkin's employment at C&S, the firm was (and may still be) engaged by Palisades as one of its debt collection law firms. (Def.'s Mem. 3-4). Pursuant to the agreement between Palisades and C&S, Palisades would "at its sole discretion" refer accounts to C&S and would "use its best efforts to provide the necessary information and documents to [C&S] to support its claim and provide [C&S] with sufficient and accurate information about each account to enable [C&S] to properly perform its services." (Def.'s Mem., Ex. B ("Braun Decl."), Ex. A, ¶ 1).[1] Palisades authorized C&S to conduct "any collection activity" C&S "deem[ed] necessary to collect the balance due on the account," including "fil[ing] a lawsuit without express written permission of [Palisades]," or "engag[ing] . . . counsel . . . to file litigation and to effectuate settlement." (*Id.* ¶ 3). In the event of a counterclaim against Palisades, C&S was to notify Palisades, which would then "determine whether it wishe[d]" C&S "to handle the defense"; pending that decision, C&S would ensure "that all filings and other deadlines in the action and counterclaim [were] met." (*Id.* ¶ 21). The agreement also stated that, "[u]nless otherwise agreed," C&S would "provide to [Palisades], in accordance with a handbook of procedures established by [Palisades] and communicated to [C&S], certain reports relating to each account." (*Id.* ¶ 11). Lastly, the agreement provided that "[e]ach party shall hold in confidence any proprietary information obtained from any other party hereto in connection with this

---

[1]   The Declaration of Steven Braun appears as Exhibit B to Defendants' memorandum of law, and the agreement between Palisades and C&S is Exhibit A to Braun's Declaration. (Docket No. 11).

Agreement," except if, among other things, "such information is or becomes public knowledge." (*Id.* ¶ 24).

Pashkin left C&S on January 17, 2014. (Decl. Mitchell L. Pashkin (Docket No. 17) ¶ 1). At some point later that year, he began representing plaintiffs in the sorts of actions against which he used to defend. (*See* Def.'s Mem., Ex. A). This case — commenced in 2015 against Palisades and others — is one such action. In his Amended Complaint, Plaintiff alleges that, in 2006 and 2007, one of Palisade's debt-collection law firms, Wolpoff & Abramson ("W&A"), sued and obtained (on Palisade's behalf) a default judgment against him to recoup a debt of $502.15, excluding interest, that Plaintiff allegedly owed to AT&T (and that AT&T had assigned to Palisades). (Am. Compl. (Docket No. 9) ¶¶ 21-22; *see id.*, Exs. 1, 2). Plaintiff alleges that the process server who had supposedly served the summons and complaint, Luis Agostini, did not actually effect proper service; indeed, Plaintiff alleges that Agostini conducted so-called "sewer service" by fraudulently representing that he had served an unidentified co-tenant of Plaintiff's. (Am. Compl. ¶¶ 28-32). As a result — and because Plaintiff did not, in fact, even have an AT&T account — Plaintiff did not learn of the action or judgment against him until roughly seven years later, after Palisades hired another firm, Houslanger & Associates ("H&A"), to enforce the judgment. (*Id.* ¶¶ 23-27, 33). After H&A was notified of the possible issues with service of the complaint, H&A agreed to vacate the default judgment and dismiss the action. (*Id.* ¶ 35). Plaintiff claims that, based on the foregoing, W&A, H&A, Palisades, and Alta (Palisades's parent company) are liable for violations of the FDCPA.[2] Plaintiff also seeks to pursue the action on behalf of a class. (*Id.* ¶¶ 84-90).

---

[2] The Amended Complaint alleges that Palisades and Alta had notice that the original service of Plaintiff may have been faulty because of their involvement in two other lawsuits: *Bernhart v. Asta Funding, Inc.*, No. 13-CV-02935 (RPP) (S.D.N.Y.), and *Mayfield v. Asta*

On December 18, 2015, Palisades moved to disqualify Pashkin from serving as Plaintiff's attorney in this case, based on his prior employment at C&S.  (Docket No. 10).  Four days later, on December 22, 2015, Palisades and Alta moved to dismiss the Amended Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  (Docket No. 13).  That motion is stayed pending resolution of the motion to disqualify.  (Docket No. 15).

## DISCUSSION

The power to disqualify an attorney is derived from a court's "inherent power to preserve the integrity of the adversary process," *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted), and the decision to do so is "a matter committed to the sound discretion of the district court," *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).  The Second Circuit has observed, however, that "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation."  *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (quoting *Bd. of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir. 1979)).  More significantly, motions to disqualify are viewed with disfavor in this Circuit because, as the Court of Appeals has observed, they are "often interposed for tactical reasons, and . . . even when made in the best faith, [they] inevitably cause delay."  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir. 1983) (internal quotation marks omitted); *accord Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *see also, e.g.*, *Arista*

---

*Funding, Inc.*, No. 14-CV-02591 (LAP) (S.D.N.Y.).  (Am. Compl.  ¶¶ 67-70).  There is no indication that Pashkin or C&S had any involvement in those two cases.

4

*Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) ("District courts have broad discretion to disqualify attorneys, but it is a drastic measure that is viewed with disfavor in this Circuit." (internal quotation marks omitted)).  Thus, while "any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010).

"When dealing with ethical principles," a court may not "paint with broad strokes.  The lines are fine and must be so marked . . . and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent." *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977) (internal quotation marks omitted); *see also Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004) (noting that the "district court must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel").  When engaging in that fact-intensive inquiry, a court may consult the disciplinary rules of the American Bar Association and New York State, but those rules are not binding.  *See, e.g.*, *Hempstead Video*, 409 F.3d at 132; *Falk v. Gallo*, 901 N.Y.S.2d 99, 100 (2d Dep't 2010).  Indeed, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132; *accord Falk*, 901 N.Y.S.2d at 100.  Instead, "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker*, 716 F. Supp. 2d at 231 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

Here, Palisades invokes Rules 1.6, 1.7, and 1.9 of the New York Rules of Professional Conduct, of which Rule 1.9(a) — which addresses duties to a former client — is the most relevant. It provides in relevant part that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

N.Y. Rule Prof'l Conduct 1.9(a). Tracking the Rule, the Second Circuit has held that where, as here, a former client moves to disqualify opposing counsel, disqualification may be warranted if "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; *and* (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Hempstead Video*, 409 F.3d at 133 (emphasis added) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

Palisades's motion turns on the "substantial relationship" factor, as there is no dispute that C&S — and, by extension, Pashkin — represented Palisades, *see, e.g.*, *Hempstead Video*, 409 F.3d at 133 (noting that "[a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences"), and, if the second factor is met, there is a presumption that the third is as well, *see, e.g.*, *Chinese Auto. Distribs. of Am. LLC v. Bricklin*, No. 07-CV-4113 (LLS), 2009 WL 47337, at *3 (S.D.N.Y. Jan. 8, 2009). Significantly, the "substantial relationship" inquiry "does not turn on whether the *legal* claims or underlying theories are similar, but rather whether the successive representations share common material *factual* issues." *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 272 (E.D.N.Y. 2015) (emphasis added); *see also, e.g.*, *U.S. Football League v. Nat'l Football League*, 605 F.

Supp. 1448, 1460 n.26 (S.D.N.Y. 1985) ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes."). Moreover, "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client." N.Y. Rule Prof'l Conduct 1.9, cmt. 2. And, "[i]n the case of an organizational client," such as Palisades, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." *Id.*, cmt. 3. Ultimately, "[t]he party seeking disqualification must show 'that the relationship between the issues in the prior and present cases is 'patently clear,' 'and that the issues are 'identical' or 'essentially the same.'" *Leslie Dick Worldwide, Ltd. v. Soros*, No. 08-CV-7900 (BSJ) (THK), 2009 WL 2190207, at *9 (S.D.N.Y. July 22, 2009) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978)).

Applying those standards here, Palisades's motion falls short. As an initial matter, there is no suggestion — let alone evidence — that Plaintiff's account was among the debt-collection matters that C&S or Pashkin handled on behalf of Palisades.[3] Thus, Palisades must show that there is a "substantial relationship" between the matters upon which Pashkin (or, at a minimum, C&S) actually did work and this case, such that "confidential factual information . . . normally . . . obtained in the prior representation would materially advance" Plaintiff's present cause of action. N.Y. Rule Prof'l Conduct 1.9, cmt. 3. Palisades does not really even attempt to make

---

3   As alleged in the Amended Complaint (and not challenged by Palisades), W&A handled the initial proceedings against Plaintiff on behalf of Palisades in 2006 and 2007, and H&A took over in the spring of 2014. (Am. Compl. ¶ 23). C&S does not appear to have had any involvement in the matter; moreover, the proceedings are alleged to have been dormant during the time Pashkin was working at C&S, from June 2011 to January 2014. (*Id.* ¶ 34).

that showing. Instead, claiming that C&S "perform[ed] legal services on approximately 1,404 accounts referred by Palisades" during the time that Pashkin was at the firm (Def.'s Reply 4), Palisades insists that Pashkin would have been privy to, among other things, "the business practices, procedures and protocols of his clients, including Palisades" (Def.'s Mem. 10). Palisades's factual claim is misleading, however, as approximately 70% of the "matters" opened and closed on the same day — a day prior to Pashkin's joining the firm in June 2011 — and only one involved C&S's filing suit on Palisades' behalf. (Sur-Reply Defs.' Mot. To Disqualify (Docket No. 22) 1).) But even if true, the claim does not support a finding that "material facts of the prior representation[s] are necessary to the present litigation." *New York v. Monfort Trust*, No. 12-CV-3755 (LDW) (SIL), 2014 WL 5018607, at *5 (Oct. 7, 2014) (internal quotation marks omitted); *see also* N.Y. Rule Prof'l Conduct 1.9, cmt. 3. At most, Palisades establishes that Pashkin "recurrently handled" (or at least supervised) "factually distinct" matters of the same "type" as this suit, and may have had "general knowledge" of Palisades's "policies and practices," but that is not enough to warrant disqualification. N.Y. Rule Prof'l Conduct 1.9, cmts. 2-3. In short, because Palisades fails to identify "knowledge of specific facts gained in [C&S's] prior representation[s] that are relevant" to this case, it fails to show that Pashkin's representation runs afoul of Rule 1.9 or that disqualification is necessary. *Id.*, cmt. 3.

In arguing otherwise, Palisades relies on two *other* cases in which Pashkin was disqualified due to his work at C&S. (Def.'s Mem. 10-11; Def.'s Reply 3, 7). Neither of those cases, however, calls for a different result here. In the first case, *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, No. 14-CV-4868 (KAM) (MDG), 2015 WL 5579876 (E.D.N.Y. Sept. 22, 2015), Pashkin represented three individual plaintiffs who were suing C&S itself, on a theory of liability identical to that pursued in a class action lawsuit against C&S when Pashkin worked at

the firm.  *See id.* at *6 (noting that two of the individual plaintiffs had even "received notice to participate as class members in [the earlier action] but opted not to join").  Under those circumstances, Pashkin himself even "conceded" that the *Wai* case and the prior class action were "substantially related."  *Id.* at *9.  The only issue left for the Court, then, was "whether Mr. Pashkin formerly represented C&S in" the prior class action.  *Id.*  The Court easily found that "the undisputed facts demonstrate[d]" that Pashkin actively participated in the settlement process of that litigation and "learn[ed] confidential information that could be used by his current clients to the detriment of his former employer."  *Id.*  Whatever *Wai* may say about Pashkin's ethical judgment in that case, it has no bearing on his disqualification in this case.

In *Midland Funding LLC v. Digiacomo*, CV-003276/2010, NYLJ 1202737311993 (N.Y. City Civil Ct. Aug. 6, 2015), a New York state court disqualified Pashkin from serving as an individual defendant's counsel in a suit brought by a collection agency that C&S had represented while Pashkin worked there, concluding that his "prior representation of Midland" and the suit at issue were "substantially related."   The Court reached that conclusion, however, with only a cursory analysis of Pashkin's supervisory position at C&S.  Accordingly, it has little or no persuasive weight (and is obviously not binding on this Court).  Further, because "the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent," *Fund of Funds*, 567 F.2d at 227 (internal quotation marks omitted), the mere fact that Pashkin was disqualified in one or two other cases does not call for the same result here.  Put simply, Palisades fails to show that the facts of *Midland* and *Wai* are the same or similar enough to the facts of this case to have any bearing here.  That is, although Palisades seeks to paint this case, *Wai*, and *Midland* with the same broad strokes, "[w]hen dealing with

9

ethical principles," as here, the Court "cannot paint with broad strokes." *Id.* (internal quotation marks omitted). Accordingly, Defendants' motion to disqualify Pashkin is DENIED.

One caveat is warranted, however. Plaintiff purports to bring this case on behalf of a class. (*See* Am. Compl. ¶¶ 84-90). Although Plaintiff has not moved for class certification, the class he purports to represent could conceivably include people whose claims arise from debt-collection proceedings that C&S handled on behalf of Palisades when Pashkin worked there. (*See* Am. Compl. ¶ 85). If so, that could impact whether class certification is appropriate. *See* Fed. R. Civ. P. 23(a)(4) (requiring, as a condition of class certification, that the representative parties "fairly and adequately protect the interests of the class"); *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (noting that, "[t]o be fair and adequate" for purposes of Rule 23(a)(4), "class counsel must be qualified, experienced and generally able to conduct the litigation" (internal quotation marks omitted)). Alternatively, it might call for revisiting the question of whether Pashkin should be permitted to represent Plaintiff. But the Court need not address those potentially thorny questions now, as Plaintiff has not moved for class certification and may never do so. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (noting that "a putative class acquires an independent legal status [only] once it is certified under Rule 23"). And while those considerations could conceivably affect Pashkin's incentives to pursue class certification, that is not a basis for his disqualification, as he represents only Plaintiff and owes no duties of loyalty to putative class members.

## CONCLUSION

For the foregoing reasons, Palisades's motion to disqualify Pashkin as counsel is DENIED. The motion to disqualify having been resolved, Plaintiff shall file any opposition to

the pending motion to dismiss by **April 26, 2016**; Defendants' reply, if any, is due by **May 3, 2016**.  (*See* Docket Nos. 12, 15).

       The Clerk of Court is directed to terminate Docket No. 10.

       SO ORDERED.

Date: April 12, 2016
      New York, New York

_____
JESSE M. FURMAN
United States District Judge